## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

**ROD COFFMAN and**
**RICHARD SAWIN,**

     **Plaintiffs,**

**vs.**                                                                      **10-CV-1027 JAP/WPL**

**STATE OF NEW MEXICO and**
**PUBLIC EMPLOYEES RETIREMENT**
**ASSOCIATION, NANCY HEWITT,**
**OSCAR J. AREVALO, and**
**GOVERNOR WILLIAM RICHARDSON,**
**in their official capacities,**

     **Defendants.**

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANTS' MOTION TO DISMISS (Doc.  No. 30)

The State of New Mexico Public Employees Retirement Association, Nancy Hewitt,

Oscar J. Arevalo, and Governor William Richardson[1] (Defendants) ask the Court to dismiss all

of the claims asserted by Plaintiffs Rod Coffman and Richard Sawin (Plaintiffs) in

---

[1] Defendants assert that at the Scheduling Conference, Plaintiffs agreed to dismiss former Governor Richardson from the lawsuit; but a stipulation of dismissal has not been filed. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii).

1

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT (Complaint).[2]

I. STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires a claimant to set forth the grounds supporting his entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts sufficient to state a plausible claim of relief. *Id*. at 570. A claim is plausible when the claimant pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Ashcroft v. Iqbal*, ___ U.S. ___ , 129 S.Ct. 1937, 1949 (2009).

II. BACKGROUND

Public employees in New Mexico receive retirement benefits through several programs established under the Public Employees Retirement Act, NMSA 1978, §§10–11–1 –10-11-140

---

[2] On June 10, 2011, Defendants filed DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS and DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (Doc. Nos. 29, 30) (Motion) asking the Court to dismiss all of the claims asserted by Plaintiffs Rod Coffman and Richard Sawin (Plaintiffs) in their SECOND AMENDED CLASS ACTION COMPLAINT (Doc. No. 14) (Complaint) filed on December 30, 2010. On July 21, 2011, Plaintiffs filed PLAINTIFFS' RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Doc. No. 35) (Response). Under the ORDER (Doc. No. 27) issued by Magistrate Judge William P. Lynch, the deadline for Plaintiffs to file a response was extended to July 25, 2011. On September 6, 2011, Defendants filed DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS (Doc. No. 36). Under Magistrate Judge Lynch's Order, the Reply was due on or before August 15, 2011.

(2010) (Act). Under the Act, participating employees are referred to as "members" of the Public Employees Retirement Association (PERA). The benefits administered by the Board on behalf of PERA are funded through contributions from participating public employees and the affiliated governmental entities that employ them.  The contributions are based on a percentage of the employee's salary. NMSA 1978 §§ 10-11-15 – 10-11-115.7.  Public employees of PERA-affiliated employers earn service credits for the "personal service rendered an affiliated public employer." NMSA 1978 § 10-11-4. The right to receive pension benefits under the Act vests after five years of employment with a PERA-affiliated employer.  However, members may collect pension benefits only after they have met certain age and service credit requirements. The Public Employees Retirement Board (Board) is the trustee of PERA and administers the funds in the PERA Fund. NMSA 1978 § 10-11-130. The Board has been given all the necessary powers "to carry out and effectuate the purposes and provisions of the [Act] . . . ." *Id.*

Plaintiffs represent a putative class of law enforcement officers and public safety personnel who retired prior to July 1, 2010 and who are currently receiving PERA pension benefits.[3] Prior to July 1, 2010, Plaintiffs were also re-employed as law enforcement officers or public safety personnel by New Mexico local and county governments affiliated with PERA.[4]

---

[3] Under the Act "retire" means to:

> (1) terminate employment with all employers covered by any state system or the educational retirement system; and
> (2) receive a pension from a state system or the educational retirement system[.]

NMSA 1978 § 10-11-2(R).

[4] The Court will refer to the class representatives and the class as "Plaintiffs." Plaintiffs state that Rod Coffman, one of the Plaintiff representatives, may have lost standing to represent the class members. Plaintiffs have proposed Edward A. Romero, as a substitute representative of the putative class.

Thus, Plaintiffs are receiving retirement benefits from PERA and salaries from their current

PERA-affiliated employers.

Defendants Nancy Hewitt and Oscar J. Arevalo are the Chair and Vice Chair respectively

of the Board. Defendant Governor William Richardson is no longer in office. Under Fed. R. Civ.

P. 25(d),[5] the current Governor, Susana Martinez, is automatically substituted as a Defendant in

place of William Richardson.

On March 2, 2010, the New Mexico Legislature passed Senate Bill 207 (SB 207), and

Governor Richardson signed SB 207 into law. The PERA promulgated regulations to implement

the provisions of SB 207. The SB 207 provisions at issue in this case are codified at NMSA 1978

§ 10-11-8 and provide,

> A. A member may retire upon fulfilling the following requirements prior to the selected date of retirement:
>
> > (1) a written application for normal retirement, in the form prescribed by the association, is filed with the association;
> >
> > (2) employment is terminated with all employers covered by any state system or the educational retirement system;
> >
> > (3) the member selects an effective date of retirement that is the first day of a calendar month; and
> >
> > (4) the member meets the age and service credit requirement for normal retirement specified in the coverage plan applicable to the member.

---

[5]   (d) Public Officers; Death or Separation from Office. An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(d).

B. The amount of normal retirement pension is determined in accordance with the coverage plan applicable to the member.

C. Except as provided in Subsection D of this section, on or after July 1, 2010, a retired member may be subsequently employed by an affiliated public employer only pursuant to the following provisions:

> (1) the retired member has not been employed as an employee of an affiliated public employer . . . for at least twelve consecutive months from the date of retirement to the commencement of employment or re-employment with an affiliated public employer;

> (2) the retired member's pension shall be suspended upon commencement of the employment;

> (3) except as provided in Subsection F of this section, the previously retired member shall not become a member and thus the previously retired member shall accrue no service credit and the previously retired member and that person's affiliated public employer shall make no contributions under any coverage plan pursuant to the Public Employees Retirement Act; and

> (4) upon termination of the subsequent employment, the previously retired member's pension shall resume in accordance with the provisions of Subsection A of this section.

. . .

F. At any time during a previously retired member's subsequent employment pursuant to Subsection C of this section, the previously retired member may elect to become a member and the following conditions shall apply:

> (1) the previously retired member and the subsequent affiliated public employer shall make the required employee and employer contributions, and the previously retired member shall accrue service credit for the period of subsequent employment; and

> (2) when the previously retired member terminates the subsequent employment with an affiliated public employer, the previously retired member shall retire according to the provisions of the Public Employees Retirement Act, subject to the following conditions:

>> (a) payment of the pension shall resume in accordance with the provisions of Subsection A of this section;

>> (b) unless the previously retired member accrued at least three years of

service credit on account of the subsequent employment, the recalculation of pension shall: 1) employ the form of payment selected by the previously retired member at the time of the first retirement; and 2) use the provisions of the coverage plan applicable to the member on the date of the first retirement; and

(c) the recalculated pension shall not be less than the amount of the suspended pension. . . .

G. A previously retired member who returned to work with an affiliated public employer prior to July 1, 2010 shall be subject to the provisions of this section in effect on the date the previously retired member returned to work; provided that, on and after July 1, 2010, the previously retired member shall pay the employee contribution in an amount specified in the Public Employees Retirement Act for the position in which the previously retired member is employed.

NMSA 1978 § 10-11-8(A)- (C)), (F), (G) (2010). The provision applicable to Plaintiffs is

Section G. Under Section G, Plaintiffs may receive their pension benefits while earning a salary,

but Plaintiffs are required to pay the employee contribution from their salaries to PERA.[6]

Plaintiffs also allege that they are not being given additional service credit for the period in

which they are employed post-retirement. Prior to July 1, 2010, the employers of re-employed

retirees were required to make both the employee's and the employer's portion of the

contribution to the PERA Fund.

In the Complaint, Plaintiffs ask the Court to enter a judgment declaring NMSA 1978 §

10-11-8(G) unconstitutional under both the United States and New Mexico Constitutions.

Plaintiffs also ask for a permanent injunction barring enforcement of NMSA 1978 § 10-11-8(G),

an award damages to class members in the amount of their contributions to the Fund since July

1, 2010, and additional service credits that they would have accrued during their re-employment.

Plaintiffs' claims for violations of the United States Constitution have been brought under 42

---

[6] The employee contribution ranges from 4.78 % to 16.65 % of the employee's salary. NMSA 1978 §§ 10-11-15 – 10-11-115.7.

U.S.C. § 1983.

In Count I, Plaintiffs ask the Court to enter a declaratory judgment that NMSA 1978 § 10-11-8(G) violates the Contracts Clauses of the United States and New Mexico Constitutions.[7] The Contracts Clause of the United States Constitution states, "[n]o state shall . . . pass any . . . law impairing the obligations of contracts." U.S. Const. art. I § 10.  The Contracts Clause of the New Mexico Constitution provides, "[n]o . . . law impairing the obligation of contracts shall be enacted by the legislature." N.M. Const. Art. II, § 19.  Plaintiffs claim that NMSA 1978 § 10-11-8(G) unconstitutionally impairs their vested contractual right to pension benefits.

In Count II, Plaintiffs claim that Nancy Hewitt, Oscar J. Arevalo, and Governor Martinez, in their official capacities, are responsible for enforcing NMSA 1978 § 10-11-8(G). Plaintiffs claim that Ms. Hewitt, Mr. Arevalo and Governor Martinez are liable under 42 U.S.C. § 1983 because they have impaired Plaintiffs' contractual rights to receive pension benefits and a salary "at the level in effect at the time they began receiving their pensions." According to Plaintiffs, the net effect of NMSA 1978 § 10-11-8(G) "dilutes the actual pension each [Plaintiff] receives." (Compl. ¶ 64.)

In Count III, Plaintiffs ask for a judicial determination that NMSA 1978 § 10-11-8(G) violates the Equal Protection Clauses of the United States and New Mexico Constitutions. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides, "[no] state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The New Mexico Constitution provides, "no person [shall] be denied equal protection of the laws." N.M. Const. Art. II, § 18.  Plaintiffs maintain that under

---

[7] Plaintiffs ask for declaratory judgments under 28 U.S.C. §§ 2201-2202 and NMSA 1978 §§ 44-6-1 et seq.

NMSA 1978 § 10-11-8(G), they are unfairly denied "a fundamental property interest." Plaintiffs contend that under SB 207, out-of-state residents, who are retired law enforcement persons, may obtain law enforcement positions in New Mexico and choose not to contribute to PERA while they receive their out-of-state pensions. (Compl. ¶ 69.) Plaintiffs further allege that if those persons choose to become members of PERA, "[o]ut of State retirees who come to New Mexico and work for a PERA affiliated employ[er] become vested after five years[,] and the out of State retiree can retire from the PERA system and draw a life-long benefit." (*Id.* ¶¶ 70-71.) Plaintiffs also assert that out-of-state employees, who become members of PERA and separate from employment with a PERA-affiliated employer, are eligible to receive 100% of the employees' contribution refunded to them if they choose to forego a New Mexico pension. (*Id.* ¶ 72.) By comparison, Plaintiffs allege that under the provisions of NMSA 1978 § 10-11-8(G), "a return-to-work retiree receives no refund of contributions upon separation of employment." (*Id.* ¶ 73.) Plaintiffs also claim NMSA 1978 § 10-11-8(G) unconstitutionally discriminates against them because retired members of the State of New Mexico Educational Retirement system and the New Mexico Judicial Retirement system are not subject its provisions.

    In Counts IV and V, Plaintiffs claim that they had legitimate expectations that they would receive their pensions and post-retirement salaries at the levels specified under the law in effect when they retired. (*Id.* ¶ 79.) Plaintiffs claim that NMSA 1978 § 10-11-8(G) diminishes their vested right to pension benefits without just compensation in violation of the Takings Clauses of the United States and New Mexico Constitutions. In addition, Plaintiffs claim that they had legitimate expectations that they would receive annual post-retirement adjustments to their pensions at the levels specified under the law in effect when they began receiving pension benefits and that NMSA 1978 § 10-11-8(G) diminishes the vested right to those adjustments. (*Id.*

¶¶ 83-84.) The Takings Clause of the Fifth Amendment, applied to the States by incorporation through the Fourteenth Amendment, provides, "no . . . private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V. The New Mexico Constitution provides, "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation." N.M. Const. Art. I, § 13.

In Count VI, Plaintiffs claim that NMSA 1978 § 10-11-8(G), on its face and as applied, is an unconstitutional bill of attainder under both the United States and New Mexico Constitutions because Section G inflicts punishment on Plaintiffs without a judicial trial. The United States Constitution provides, "[n]o Bill of Attainder . . . shall be passed." U.S. Const. art. I, § 9, cl. 3. The New Mexico Constitution states, "[n]o . . . bill of attainder . . . shall be enacted by the legislature." N.M. Const. Art. II, § 19.[8]

III. DISCUSSION

    A.    <u>The Court lacks jurisdiction over claims against the State of New Mexico and PERA; in addition, Plaintiffs have failed to state valid claims against the State of New Mexico and PERA</u>

In Counts I-VI of the Complaint, Plaintiffs assert claims against the State of New Mexico and PERA for violations of the United States Constitution. Section 1983 of title 42 provides the basis for a cause of action against persons who violate federally protected rights of others:

---

[8] A bill of attainder "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Bledsoe v. United States*, 384 F.3d 1232, 1238 (10th Cir. 2004) (quoting *Nixon v. Administrator of General Services*, 433 U.S. 425, 468 (1977)).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege: (1) that the plaintiff has been deprived of a protected right under federal law, and (2) that the defendant is a person who deprived him of his right under color of state law. *See Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

Under the Eleventh Amendment of the United States Constitution, however, states are immune from suits in federal court brought by its citizens unless the state consents to suit.[9] *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). "The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent [the States'] consent." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). The State of New Mexico has not consented to federal civil rights suits. *Jackson v. New Mexico Public Defender's Office*, 361 Fed. App'x 958, 963 (10th Cir. 2010) (unpublished decision) (New Mexico has not waived immunity under Eleventh Amendment from suits for violations of federal civil rights). Therefore, all of Plaintiffs' claims under 42 U.S.C. § 1983 against the State of New Mexico must be dismissed for lack of subject matter jurisdiction.

PERA is an entity created under New Mexico statutory law and is considered a subdivision or "arm" of the State of New Mexico. *See* NMSA 1978 § 10-11-3(A) (2010) (creating the Public Employees Retirement Association); NMSA 1978 § 10-11-130 (2005)

---

[9] *See* U.S. Const amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

(creating the retirement board as the trustee of the Public Employees Retirement Association). As an arm of the State, PERA is also immune from suit in federal court under the Eleventh Amendment. Thus, all § 1983 claims against PERA must also be dismissed for lack of subject matter jurisdiction.

In addition, Plaintiffs have failed to state claims under § 1983 against the State of New Mexico and PERA because neither states nor state agencies are "persons" for purposes of liability under § 1983. *Harris v. Champion*, 51 F .3d 901, 905-06 (10th Cir.1995). *See also McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir.2000) (stating that "a governmental entity that is an arm of the state for Eleventh Amendment purposes is not a 'person' for § 1983 purposes."). Therefore, even if the Court had subject matter jurisdiction, the Court would dismiss Plaintiffs' § 1983 claims against the State of New Mexico and PERA under Fed. R. Civ. P. 12(b)(6) for failure to state plausible claims against these Defendants.

> **B.**   Section 1983 Claims Against Ms. Hewitt and Mr. Arevalo

> > **1.**   The Eleventh Amendment bars claims for damages against Ms. Hewitt and Mr. Arevalo in their official capacities

When a claim is asserted against a state official in his or her official capacity, the official "may also assert Eleventh Amendment immunity as an 'arm' of the state . . . [and] is generally entitled to assert the same immunities as the governmental entity for which he or she works." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)(citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Thus, the Eleventh Amendment generally bars suits brought by individuals against state officials acting in their official capacities. *Elephant Butte Irrigation Dist. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998). However, this bar does not apply if the state waives its sovereign immunity, if Congress validly abrogates the state's immunity, or if the suit falls within

the legal fiction of *Ex Parte Young*, 209 U.S. 123, 167-68 (1908). *Id.*

In addition, the United States Supreme Court has held that, in suits for damages, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, to the extent that Plaintiffs' federal constitutional claims against Ms. Hewitt and Mr. Arevalo seek monetary damages under § 1983 for violations of the United States Constitution, those claims fail to state a claim under Fed. R. Civ. P. 12(b)(6) and will be dismissed. *See also Ross v. The Board of Regents of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010) (upholding dismissal of damage claims against state officials under § 1983).

Plaintiffs have requested reimbursement of all payments that they have made to PERA since July 1, 2010 under NMSA 1978 § 10-11-8(G). This request is the same as a request for compensatory damages, and as such, the relief is also barred under the Eleventh Amendment. *See Johns v. Stewart,* 57 F.3d 1544, 1553-54 (10th Cir.1995) (holding that the portion of plaintiffs' Social Security Act claim against Utah state official seeking reimbursement of withheld assistance benefits was barred by the Eleventh Amendment).

2.     The *Ex Parte Young* doctrine allows suits for injunctive relief against Ms. Hewitt and Mr. Arevalo

Under the *Ex Parte Young* doctrine, suits may be brought against state officials for prospective injunctive relief against an ongoing violation of federal constitutional law. *See generally Elephant Butte*, 160 F.3d at 607-09 (allowing suit against public officials asking for injunction against collection of lease proceeds because the relief was prospective). A suit under the doctrine announced in *Ex Parte Young* is not considered a suit against the state; rather, it is a suit against individual state officers who are stripped of their official character. *Elephant Butte,*

12

160 F.3d at 608. Although the Eleventh Amendment bars compensatory relief for past injuries, "relief that serves directly to bring about an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Papasan v. Allain*, 478 U.S. 265, 278, (1986). Hence, Ms. Hewitt and Mr. Arevalo are not immune from Plaintiffs' federal constitutional claims for prospective injunctive and declaratory relief. *Elephant Butte*, 160 F.3d at 609.

In addition, with respect to claims seeking prospective injunctive and declaratory relief, Ms. Hewitt and Mr. Arevalo are also considered "persons" under § 1983. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under Section 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (quoting *Will,* 491 U.S. at 71 n. 10)). Thus, to the extent that Plaintiffs seek prospective injunctive and declaratory relief against Ms. Hewitt and Mr. Arevalo for violations of the United States Constitution, Plaintiffs may assert claims against them as "persons" under § 1983.

Plaintiffs contend that all of their federal claims fall within the *Ex parte Young* exception because the claims seek an injunction against the ongoing enforcement of NMSA 1978 § 10-11-8(G).  Specifically, Plaintiffs seek to enjoin Mr. Hewitt and Mr. Arevalo from enforcing NMSA 1978 § 10-11-8(G)'s requirement that Plaintiffs contribute a percentage of their salary to PERA. If an injunction is entered, all future contributions from Plaintiffs' salary would cease, and this relief is allowed under *Ex Parte Young*. *See Elephant Butte*, *supra*.  However, to the extent that Plaintiffs seek reimbursement of past contributions to the PERA Fund, this relief is retrospective monetary relief and is barred by the Eleventh Amendment and under § 1983. Plaintiffs also seek to enjoin the prohibition against earning additional service credits applicable to Plaintiffs' re-

13

employment. This type of relief would be prospective injunctive relief and is allowed under the Eleventh Amendment and § 1983.

The Court concludes that Plaintiffs' claims under federal law seeking reimbursement of their past PERA contributions are barred because those claims seek retrospective monetary relief. However, Plaintiffs' claims seeking an injunction against future PERA deductions from their re-employment salary and Plaintiffs claims seeking an order allowing them to accrue additional service benefits, are allowed as prospective injunctive relief.

<u>3.</u>   <u>Plaintiffs' claims for prospective injunctive relief do not affect<br/>New Mexico's special state sovereignty interests</u>

In 1997, the Supreme Court narrowed the *Ex parte Young* doctrine to exclude certain actions for prospective equitable relief against state officials that would interfere with states' special sovereignty interests. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 283 (1997) (holding that the state had a unique sovereign interest in submerged land within its borders, and state officials could not be sued for reinstatement of the tribe's right to those lands under *Ex parte Young*). Ms. Hewitt and Mr. Arevalo argue that even though Plaintiffs appear to seek prospective relief for an ongoing violation of federal law, the Court should dismiss all of the federal constitutional claims because Plaintiffs' requested relief implicates New Mexico's special sovereignty interests. *Coeur d'Alene Tribe*, 521 U.S. at 281 (dismissing suit against state for prospective injunctive relief that was actually a quiet title action against state lands). The Tenth Circuit's opinion in *Elephant Butte* is instructive on this issue.

In *Elephant Butte,* the Tenth Circuit Court of Appeals considered the effect of *Coeur d'Alene Tribe* on claims brought by an irrigation district and water improvement district against New Mexico state officials claiming that the officials illegally received profits under a

14

recreational land lease. 160 F.3d at 605. The irrigation and water districts claimed entitlement to

those profits under federal land reclamation laws. *Id.* The Tenth Circuit Court of Appeals held

that the claimants could sue the state in federal court for future lease payments because the suit

did not affect a special New Mexico sovereignty interest. *Elephant Butte*, 160 F.3d at 612-13. In

*Elephant Butte*, the Tenth Circuit compared New Mexico's interest in the future lease profits

with Idaho's special sovereignty interest in the submerged lands in *Coeur d'Alene Tribe*. The

court concluded that "this case presents the possibility of a readjustment of priorities for the

distribution of profits from certain uses of Project lands, not an impermissible affront to New

Mexico's political authority." *Id.* at 613. Similarly, Plaintiffs here challenge an economic

decision by New Mexico that shifts to retired public employees the responsibility of contributing

to the PERA Fund the employees' percentage from re-employment earnings. New Mexico's

interests at issue here do not rise to the level of special sovereignty interests. *Id.* at 612.

In sum, Plaintiffs are not precluded from seeking prospective injunctive relief regarding

NMSA 1978 § 10-11-8(G)'s requirement that re-employed retirees contribute to PERA without

accruing additional service credits.

      C.    Immunity From Liability for Damages Under the NMTCA for violations
             of the New Mexico Constitution

In the New Mexico Tort Claims Act (NMTCA), the New Mexico legislature noted "the

inherent unfair and inequitable results which occur in the strict application of the doctrine of

sovereign immunity." NMSA 1978 § 41-4-2(A). The New Mexico Legislature, however, also

recognized "that while a private party may readily be held liable for his torts within the chosen

ambit of his activity, the area within which the government has the power to act for the public

good is almost without limit, and therefore government should not have the duty to do

everything that might be done." NMSA 1978 § 41-4-2(A).  As a result, the legislature "declared

to be the public policy of New Mexico that governmental entities and public employees shall

only be liable within the limitations of the Tort Claims Act and in accordance with the principles

established in that act." NMSA 1978 § 41-4-2(A). The NMTCA is the "exclusive remedy against

a governmental entity or public employee for any tort for which immunity has been waived

under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason

of the same occurrence, may be brought against a governmental entity or against the public

employee or his estate whose act or omission gave rise to the suit or claim." NMSA 1978 § 41-4-

17(A).  However, the NMTCA does not bar claims for injunctive relief. NMSA 1978 § 41-4-

17(A) (stating that nothing in NMTCA "shall be construed to prohibit any proceedings for

mandamus, prohibition, habeas corpus, certiorari, injunction or quo warranto.").  *See also El

Dorado Utilities, Inc. v. Eldorado Area Water & Sanitation*, 2005-NMCA-036, ¶ 28, 137 N.M.

217, 109 P.3d 305 (stating that the NMTCA "would not bar a claim for injunctive relief.").

    Defendants correctly assert that officers of the State cannot be sued for damages under

the NMTCA. "Absent a waiver of immunity under the Tort Claims Act, a person cannot sue the

state for damages for violation of a state constitutional right." *Ford v. New Mexico Dep't of

Public Safety*, 891 P.2d 546, 553 (N.M. Ct. App. 1994). Plaintiffs, however, correctly assert that

the NMTCA does not bar claims for prospective declaratory or injunctive relief for violations of

the New Mexico Constitution. In sum, because there is no waiver of immunity from damages

suits for violations of the New Mexico Constitution, all of Plaintiffs' damage claims for state

constitutional violations will be dismissed. But, the Court will not dismiss on immunity grounds

Plaintiffs' claims requesting prospective declaratory and injunctive relief for violations of the

New Mexico Constitution.

      D.      Defendants Hewitt and Arevalo are not entitled to absolute legislative immunity

The United States Supreme Court has recognized that legislators are immune from suit. "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54, (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). *See also Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248, 1250 (10th Cir. 1998) (stating that the principle that legislators are absolutely immune from liability for their legislative activities "is well established in this circuit."). Absolute legislative immunity is not limited to legislators. State officials performing legislative functions are also entitled to absolute immunity from suit. *Sable v. Myers*, 563 F.3d 1120, 1126-27 (10th Cir. 2009) (holding that city council's decision to condemn land was shielded by absolute legislative immunity). However, the scope of legislative immunity is narrowly construed, and the government official seeking immunity "bears the burden of showing that an exemption from liability is justified." *Kamplain*, 159 F.3d at 1251. A defendant's actions are an exercise of legislative power if those actions involve "determining, formulating, and making policy." *Id.* To determine whether a particular task is legislative for purposes of extending immunity, a court looks to the function performed by the defendant and not to his or her title. *Lewis v. New Mexico Dep't of Health*, 275 F. Supp. 2d 1319, 1325 (D. N.M. 2003) (citing *Forrester v. White*, 484 U.S. 219, 224 (1988)).

Ms. Hewitt and Mr. Arevalo argue that as members of the PERA Board that administrates the PERA Fund in accordance with state law, they are acting in a legislative capacity. Plaintiffs contend that their claims do not involve activities that are legislative under the narrow construction of that concept. The Court agrees with Plaintiffs. Ms. Hewitt and Mr.

Arevalo were engaged in administrative acts taken to enforce the provisions of NMSA 1978 §

10-11-8(G), and their actions are not related to "determining, formulating, and making policy."

*Id.* Thus, Ms. Hewitt, and Mr. Arevalo are not entitled to absolute legislative immunity from

Plaintiffs' claims for prospective injunctive relief.

E.      The Governor is entitled to legislative immunity

In the Complaint, Plaintiffs allege that as a member of the executive branch of

government, Governor Richardson, who has now been replaced by Governor Martinez, is

charged with enforcing the provisions of NMSA 1978 § 10-11-8(G). Plaintiffs contend that the

Governor is not entitled to legislative immunity; however, Plaintiffs have cited no New Mexico

statute or regulation placing on the Governor the responsibility of enforcing NMSA 1978 § 10-

11-8(G). In addition, Plaintiffs have not alleged that the Governor is involved in the day-to-day

operations of the PERA. The Supreme Court has recognized that executives, such as mayors and

governors, who sign or veto a bill, are engaged in the legislative process.  *See Bogan v.*

*Scott-Harris*, 523 U.S. 44, 55 (1998) (stating that mayor of Fall River, Massachusetts who

introduced a budget and signed ordinance into law was acting in legislative capacity, even

though the mayor was an executive official). For this reason, the Court concludes that Governor

Martinez is entitled to absolute legislative immunity from all of the claims asserted in the

Complaint because the Governor's only actions consisted of signing SB 207.  *See Lewis*, 275 F.

Supp. 2d at 1327 (Vazquez, J.) (holding that Governor Johnson was immune from suit for

violations of the ADA alleging that his budgetary decisions resulted in lower funding for the

New Mexico Department of Health).

F.      Federal and State Constitutional Claims For Declaratory and Injunctive Relief

1.      Contracts Clause Claims

In Counts I and II, Plaintiffs ask for a judgment declaring that NMSA 1978 § 10-11-8(G)

violates the Contracts Clauses of the United States and New Mexico Constitutions by

significantly diminishing their contractual rights "to receive post-retirement pension benefits at

the level in effect at the time they began receiving their pensions." (Compl. ¶ 63.)  Plaintiffs

assert that (1) the requirement that they contribute to PERA a percentage from their salaries and

(2) the prohibition against accruing additional service credits from the time they are re-employed

unconstitutionally impair their vested contractual pension rights by diluting the pension each

Plaintiff receives. (*Id.* ¶ 64.) [10]

In ruling on a claim under the Contracts Clause of the United States Constitution, a Court

must first ask "whether the change in state law has 'operated as a substantial impairment of a

contractual relationship.'" *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (citing

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978) and *Energy Reserves Group,

Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983)). This inquiry has three

components: "whether there is a contractual relationship, whether a change in law impairs that

contractual relationship, and whether the impairment is substantial." *General Motors,* 503 U.S.

at 186-87. However, "absent some clear indication that the legislature intends to bind itself

contractually, the presumption is that 'a law is not intended to create private contractual or

vested rights but merely declares a policy to be pursued until the legislature shall ordain

---

[10] NMSA 1978 § 10-11-8(G)'s language does not explicitly deny the accrual of service credits, and Plaintiffs do not indicate under which provision of the Act they claim they are denied service credits from their re-employment. The Court will assume that under some provision of the Act, which Plaintiffs have not identified, they are denied service credits.

otherwise.'" *National R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985) (citing *Dodge v. Board of Education,* 302 U.S. 74, 79 (1937)). Courts recognize, in this well-established presumption, that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. *Id.* at 466. Consequently, the party asserting the creation of a contract must overcome this well-founded presumption. *Id.*

The New Mexico Supreme Court has ruled that the New Mexico statutes defining the terms of public employment do not create a contractual relationship between the State and public employees. "[I]t is well established that statutes fixing the compensation or terms of public employment are presumed merely to establish public policy subject to legislative revision, and not to create contractual or vested rights." *Whitely v. New Mexico Personnel Bd.*, 850 P.2d 1011, 1015 (N.M. 1993) (citing *Dodge*, 302 U.S. at 78-79). Contractual rights are created by statute only if "the language of the statute and the circumstances . . . manifest a legislative intent to create private rights of a contractual nature enforceable against the State." *Id.* In addition, New Mexico courts do not "imply a legislative intent to create private rights of a contractual nature against the State[.]" *Pierce v. State*, 1996-NMSC-001, ¶ 17 121 N.M. 212, 220, 910 P.2d 288, 296 (quoting *Whitely*, 850 P.2d at 1015).

In *Pierce*, the New Mexico Supreme Court determined as a matter of law that no private contractual rights were created by Public Employees Retirement Act. *Id.*

> It is apparent from the plain language used [in the Act] that the original legislative intent of PERA was to preclude creating general contractual rights to benefits. It is equally apparent that the PERA retirement board expressly retained the power to modify the amount of employee contributions or the amount of benefits payable. That the legislature granted the board the right to modify benefits and payments is contrary to any intent to confer private contractual rights.

20

*Id.* ¶ 33.

Plaintiffs contend that the Tenth Circuit and a majority of states have found that pensions are a form of compensation and that employees who become eligible for pensions acquire vested contractual rights to those pension benefits. However, the Tenth Circuit cases cited by Plaintiffs are inapposite ERISA cases, and New Mexico does not follow the reasoning of states holding that a public employee's right to a pension is a contractual right. *Pierce*, 1996-NMSC-001, ¶¶ 5-11, 27 (comparing different approaches by states and finding more persuasive state law that denied contract status to government pensions).

Plaintiffs point to a statement by the *Pierce* court recognizing a contractual right to a refund of member contributions. "When originally enacted, PERA stated that 'nothing done hereunder shall create any contract rights to anyone, except the right to receive back accumulated deductions upon withdrawings [sic] from the public service.'" *Id.* ¶ 32. However, the *Pierce* court also stated that ". . . in 1987 [a] . . . new provision granted employees with five or more years of credited service a vested right in membership upon termination of employment provided the employees did not withdraw their individual contributions." *Id.* ¶ 37. *See* NMSA 1978 § 10-11-9 (Repl. Pamp. 1987). The court concluded, "[t]he right to receive benefits under PERA is merely an expectancy until an employee has earned five years of service credits. Unlike some states, [New Mexico has] . . . no constitutional language creating a contractual right to retirement benefits. Likewise, we find no statutory language in any of the plans that clearly and unambiguously spells out a contract between the State and its employees." *Id.* ¶ 39.

Plaintiffs contend that the *Pierce* court's recognition of a contractual right to a refund of member contributions requires this Court to recognize that Plaintiffs have a contractual right to receive back their contributions if they are terminated from re-employment. However, the right

to a refund is available if an employee is terminated from public employment and if the employee chooses to receive a refund of his contributions instead of a pension. *See* NMSA 1978 § 10-11-3(F) (stating that a terminated employee may elect to receive a refund of all payments into PERA).[11]  If an employee chooses to receive a refund, he forfeits all service credit and the right to a pension. NMSA 1978 § 10-11-4(E).[12]

The Plaintiffs are retired PERA members who are receiving a pension; therefore, the option to receive a refund of their contributions is no longer available to Plaintiffs. Thus, neither the general provisions governing the payment of a pension nor the specific provision of NMSA 1978 § 10-11-8(G) regarding the requirement that retired employees contribute a percentage of their salaries to PERA are contractual under *Pierce* and *Whitely*. In addition, Plaintiffs have failed to allege that they have an employment contract governing their re-employment positions. *Beggs v. City of Portales*, 2009 - NMSC - 023, ¶ 22, 146 N.M. 372, 210 P.3d 798 (2009) (reversing summary judgment and finding a fact issue as to whether an implied contract existed from a personnel policy manual provision that required a city to offer its retiring employees the option of continuing their health care coverage under the city's group plan because the manual covered every aspect of the employment relationship and contained language that the city "shall

---

[11] Section 10-11-3(F) provides,

The membership of an employee or elected official shall cease if the employee terminates employment with an affiliated public employer or the elected official leaves office and the employee or elected official requests and receives a refund of member contributions.

NMSA 1978 § 10-11-3(F).

[12] Section 10-11-4(E) provides, "[s]ervice credit shall be forfeited if a member terminates employment with an affiliated public employer and withdraws the member's accumulated member contributions." NMSA 1978 § 10-11-4(E).

offer" its returning employees health insurance benefits). In sum, Plaintiffs have failed show that

the Act imposes a contractual obligation by the State of New Mexico to pay both pension

benefits and undiminished salaries to re-employed retirees. Consequently, the Court concludes as

a matter of law that NMSA 1978 § 10-11-8(G) does not violate the Contracts Clauses of the

United States and New Mexico Constitutions, and the Court will dismiss Counts I and II.

2.     Equal Protection Claims

In Count III, Plaintiffs allege that NMSA 1978 § 10-11-8(G) unconstitutionally

discriminates against them in violation of the Equal Protection Clauses of the United States and

New Mexico Constitutions. Plaintiffs contend that they are denied a "fundamental property

interest" because SB 207 permits out of state residents, who are retired law enforcement and

who obtain law enforcement positions within the State of New Mexico, to qualify for a pension

without contributing to PERA, whereas Plaintiffs must make the PERA contribution.[13] (Compl. ¶

69.)  Plaintiffs contend that "[o]ut of state retirees who come to New Mexico and work for a

PERA affiliated employe[r] become vested after five years[,]" and can "draw a life-long

benefit."  (*Id.* ¶¶ 70-71.)  Plaintiffs assert that if out-of-state retirees separate from employment

with a PERA-affiliated employer or elect not to draw a pension, they are eligible for a full refund

of their contributions. (*Id.* ¶ 72.) By comparison, Plaintiffs, as re-employed retirees under PERA,

must pay the employees' percentage into the Fund and have no right to a refund of their re-

employment contributions. (*Id.* ¶ 73.) Plaintiffs maintain that this disparity is unconstitutional.

The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within

---

[13] Although not clearly explained by Plaintiffs, the Court assumes that Plaintiffs take
issue with the fact that out-of-state retirees who accept employment with PERA affiliated
employers are not subject to NMSA 1978 § 10-11-8(G) and that PERA-affiliated employers of
these retirees pay the employee's percentage to the PERA Fund.

23

its jurisdiction the equal protection of the laws[.]" U.S. Const. Amend. XIV, § 1. Under both the United States and New Mexico Constitutions courts apply the same equal protection analysis for legislation that is economic or financial in nature. *Trujillo v. City of Albuquerque*, 965 P. 2d 305, 313 (N.M. 1998).

When considering an Equal Protection claim, the Court must apply a rational basis test if "the challenged government action does not implicate either a fundamental right or a protected class." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1110 (10th Cir. 2008). "When a statute classifies by race, alienage, or national origin . . . [it is] subjected to strict scrutiny and will be sustained only if . . . suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Public employees, however, are not members of a legally "suspect class;" therefore, laws and policies affecting public employees are not subject to strict scrutiny. *Id.* The United States Supreme Court has held that legislation affecting public employees' pensions should be examined under the rational basis test.  In *Kimel v. Fla. Bd. Of Regents*, 528 U.S. 62, 83 (2000), the Court applied the rational basis test to state legislation that changed the age requirements for retirement and stated, "age is not a suspect classification under the Equal Protection Clause. . . . [s]tates may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." *Id.*

Plaintiffs assert that their claims involve fundamental property interests, therefore, the Court should apply strict scrutiny to NMSA 1978 § 10-11-8(G). However, the right to draw a salary and a pension as a public employee does not implicate the type of fundamental property right that triggers strict scrutiny under the Equal Protection Clause. *Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 932 (10th Cir. 1989). Thus,

NMSA 1978 § 10-11-8(G) is presumed to be valid and will be upheld if "rationally related to a legitimate state interest." *Id.*

Defendants maintain that the New Mexico Legislature enacted NMSA 1978 § 10-11-8(G) to shore up the financial viability of the PERA Fund for current and future retirees and to address budget shortfalls faced by the PERA-affiliated government agencies that employ retirees. The court concludes that, as a matter of law, the Legislature had a rational basis to enact NMSA 1978 § 10-11-8(G). In addition, the requirement that re-employed retirees contribute a percentage of their salary to PERA under NMSA 1978 § 10-11-8(G) is a legitimate course to follow to achieve the goal of shoring up the financial position of the PERA Fund and the PERA-affiliated employers. In *City of Herriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010), the Tenth Circuit explained:

> A rational basis equal protection analysis is highly deferential to state legislatures, and we accord a strong presumption of validity to laws that neither involve fundamental rights nor proceed along suspect lines.

*Id.* Rational basis review is not a license for courts "to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Instead, courts must uphold a statute if there is any "reasonably conceivable state of facts" that could provide for its basis, and courts will only strike the law down if the state's classification "rests on grounds wholly irrelevant to the achievement of the State's objective," *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 71 (1978). *See also Seegmiller v. LaVerkin City*, 528 F.3d 762, 772 (10th Cir. 2008) (a rational basis review must be highly differential to the government's action). Legislative and regulatory bodies have "wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Allright Color, Inc. v. City & County of Denver*, 937 F.2d 1502, 1512 (10th Cir. 1991) *cert.*

*denied* 502 U.S. 983 (1991).

Under this standard, the economic viability of the PERA Fund and the solvency of PERA-affiliated employers who hire retirees are legitimate state interests, and NMSA 1978 § 10-11-8(G) rationally furthers those interests. Thus, the Court will dismiss Plaintiffs' equal protection claims alleged in Count III.

3.      Takings Clause Claims

In Counts IV and V, Plaintiffs allege that they had a legitimate expectation that they would receive post-retirement pensions, post-retirement adjustments to those pensions and post-retirement salaries "at the levels specified under the law in effect when they began receiving pension benefits from the Plans." (Compl. ¶ 79.)  Plaintiff claim that NMSA 1978 § 10-11-8(G) diminishes their vested rights to pension benefits; therefore, Defendants have effected a "taking" of Plaintiffs' property without just compensation.

Defendants contend that this case presents issues that are virtually identical to the issues addressed in *Archunde v. PERA*, Case No. 07 CV 484 BB/RLP in which Chief United States District Judge Bruce Black dismissed a complaint asserting claims under the Takings Clause by re-employed retirees. *See* Case No. 07 CV 484 BB/RLP, *Memorandum Opinion and Order* Doc. No. 64 at 4 (D. N.M. Sept. 10, 2008). In *Archunde*, the claimants challenged an earlier but similar amendment to the Act requiring pensioners to make the employees' percentage of PERA contributions from their re-employment salaries earned from a PERA-affiliated employer. In 2006, the New Mexico legislature passed amendments to the Act requiring the PERA-affiliated employer to pay both the employer's and its employees' contribution percentages into the Fund. The claimants in *Archunde* sued to recover funds that had been deducted from their salaries

26

during the years in which payments by employees were required prior to the 2006 amendment.[14] Thus, the claimants in *Archunde* were alleging the same type of "taking" that Plaintiffs assert here.

Plaintiffs contend that this case is factually distinguishable from *Archunde*. The Court disagrees. The same as the claimants argued in *Archunde*, the Plaintiffs argue here that their pension benefits and their salary are property and that the portion of their salary they are required to pay into PERA from their re-employment earnings was taken without just compensation. In *Pierce*, the New Mexico Supreme Court recognized that vested pension benefits are constitutionally protected property interests that could not be diminished without a just benefit in return. *Pierce*, 1996 -NMSC -001 ¶ 42. Plaintiffs correctly contend that their vested and matured pension benefits are constitutionally protected property interests; however, Plaintiffs' pensions have not been directly affected by NMSA 1978 § 10-11-8(G). Instead, it is Plaintiffs' re-employment salaries that are directly affected by NMSA 1978 § 10-11-8(G). Plaintiffs' pensions are left at their original levels. In conclusion, Plaintiffs do not have a constitutionally protected property right in their re-employment salaries.

But even if the Plaintiffs' re-employment earnings are considered a constitutionally protected property interest, the Plaintiffs have failed to persuade that they have received no benefit in return for their contributions to PERA. Plaintiffs argue that, unlike the claimants in *Archunde*, they have received no benefits as a result of NMSA 1978 § 10-11-8(G), yet Plaintiffs have incurred a significant detriment because they have had to contribute a percentage, up to

---

[14] Presumably these amendments were again changed in NMSA 1978 § 10-11-8(G), shifting the responsibility of making the employees' contribution back to the re-employed retirees.

16.65% in some cases, of their salaries into the Fund. In other words, Plaintiffs suffer a decrease

in their re-employment salaries without the concomitant service credits that would increase their

future retirement benefits. However, just as the court found in *Archunde,* Plaintiffs receive a

benefit in return for their payments into the Fund: plaintiffs "pay a percentage of their salaries

into the Fund as a fee, in return for the right to receive both a pension and a salary from the state

at the same time . . ." Case No. 07 CV 484, *Memorandum Opinion and Order* at 4.

      In *Archunde*, the court applied the analysis from two United States Supreme Court cases.

*Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211 (1986)[15] and *Concrete Pipe and

Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508

U.S. 602, 644-46 (1993).[16] In those cases, the Supreme Court applied the test for regulatory

takings announced in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104

(1978). Under the first part of the three-part test applied in *Penn Central*, the court examines the

economic impact of the government's action on the plaintiffs. *Id.* at 124. Second the court looks

at the extent to which the action interferes with "distinct investment-backed expectations." *Id.*

Third, the court analyzes whether the government's action is a physical interference or is merely

a "program adjusting the benefits and burdens of economic life to promote the public good." *Id.*

Here, as in *Archunde*, the economic impact of NMSA 1978 § 10-11-8(G) is both detrimental and

beneficial to Plaintiffs. The detriment to Plaintiffs is the requirement that they pay a percentage

---

     [15] In *Connolly,* the court held that payments required of an employer upon withdrawing
from a multi-employer pension plan could be statutorily required to shore up the solvency of the
plan and that the payments did not constitute a taking. *Connolly*, 475 U.S. at 224-27.

     [16] In *Concrete Pipe*, the court held that "withdrawal liability" under provisions of the
Employee Retirement Income Security Act of 1974 (ERISA) in the form of "a fixed and certain
debt to the pension plan" equal to the employer's "proportionate share of the plan's 'unfunded
vested benefits'" was not a taking. 508 U.S. at 609.

of their re-employment salary to PERA without accruing service credits that could potentially increase their pensions. However, NMSA 1978 § 10-11-8(G) allows Plaintiffs to receive both a pension and a salary, which gives Plaintiffs a substantial benefit. Case No. 07 CV 484 BB/RLP, *Memorandum Opinion and Order* at 4.

As for the second element, the facts in *Archunde* differ somewhat from the facts in this case, but the result is the same. In *Archunde*, the court found that when the claimants accepted the terms of their re-employment, they knew that they would have to pay the employees' percentage to PERA and agreed to the terms as a requirement of their re-employment. Thus, the court found that the claimants could not have had a reasonable expectation they would not be charged the re-employment "fee." In this case, when Plaintiffs began their re-employment, NMSA 1978 § 10-11-8(G) had not been enacted, and at that time, Plaintiffs were not required to contribute the employees' percentage to PERA because the employer was required to make that contribution. With the enactment of NMSA 1978 § 10-11-8(G), Plaintiffs' expectation that they could simultaneously earn an undiminished salary and receive a pension disappeared. However, the Plaintiffs' contention that they had a reasonable expectation that they could continue to receive a pension and an undiminished salary is belied by the history of the New Mexico pension statutes.

As described by the court in *Archunde*, prior to 2004, state law did not allow an employee to receive a pension from PERA and at the same time work for a PERA-affiliated employer unless the employee was paid less then $15,000.00 per year. Case No. 07 CV 484 BB/RLP, *Memorandum Opinion and Order* at 1. After a 2004 amendment to the Act, an employee could receive a pension and a re-employment salary with no earnings' limit. *Id.* However, under the 2004 amendment, the employee was required to pay into the PERA Fund the

employees' percentage contribution, and the employee received no additional service credit. *Id.* As described in *Archunde*, the legal atmosphere surrounding public employees' pension and re-employment earnings has changed dramatically in recent years. Hence, no public employee could reasonably expect to continue to receive an undiminished re-employment salary in addition to a pension. Therefore, NMSA 1978 § 10-11-8(G) has not unconstitutionally interfered with Plaintiffs' reasonable "investment-backed expectations." But, even if NMSA 1978 § 10-11-8(G) could be viewed as having interfered with Plaintiffs' "investment-backed expectations," the third element of the *Penn Central* test for takings weighs against finding a "taking."

With respect to the third element, NMSA 1978 § 10-11-8(G) does not effect a physical invasion of property, which is typical of eminent domain cases. Instead, NMSA 1978 § 10-11-8(G) was a legislative action designed to ensure the financial stability of the PERA Fund and the budgetary concerns of state government agencies that hired retirees. As such, NMSA 1978 § 10-11-8(G) is not a taking of private property because in NMSA 1978 § 10-11-8(G), the Legislature simply adjusted "the benefits and burdens of economic life to promote the public good." *Penn Central*, 438 U.S. at 124. In sum, NMSA 1978 § 10-11-8(G) involves the same issues as the statute in *Archunde* and cannot be considered to have effected a "taking" of Plaintiffs' property. The negative economic impact on Plaintiffs of making the percentage contribution to PERA is balanced by a benefit of allowing Plaintiffs to continue to receive their pension and at the same time earn a re-employment salary from a PERA-affiliated employer. This does not interfere with Plaintiffs' reasonable investment backed expectations and does not physically "take" the Plaintiffs' property. Therefore, the Court will dismiss Plaintiffs' Takings Clause claims made in Counts IV and V.

4. Bill of Attainder

In Count VI, Plaintiffs assert that NMSA 1978 § 10-11-8(G) creates a "*de facto* state policy that falsely declares by Legislative *fiat* that an easily identifiable group of persons are, therefore, subversive to the financial stability of the State and the PERA Fund and who should suffer 'pains and penalties' including, but not limited to castigation and calumny characterized by the pejorative term 'double dippers,' forfeiture of their property and liberty rights, perpetual exclusion from public employment and virtual banishment of those persons from the State of New Mexico should they desire or need to seek to remain in public service." (Compl. ¶ 44.) Plaintiffs contend that NMSA 1978 § 10-11-8(G) inflicts, "pains and penalties without any opportunity for a judicial trial or due process." (*Id.* ¶ 46.) Plaintiffs conclude that NMSA 1978 § 10-11-8(G), by requiring them to contribute a percentage of their salaries to the PERA Fund, constitutes "a bill of attainder prohibited by both Article I, § 10, cl. 1 of the United States Constitution and Article II, § 19 of the New Mexico Constitution." (*Id.*)

The Supreme Court described the history of bills of attainder in *Selective Service System v. Minnesota Public Interest Research Group* as follows:

> At common law, bills of attainder often imposed the death penalty; lesser punishments were imposed by bills of pains and penalties. The Constitution proscribes these lesser penalties as well as those imposing death. . . . [B]ills of pains and penalties commonly imposed imprisonment, banishment, and the punitive confiscation of property.

468 U.S. 841, 852 (1984) (citations omitted). The Supreme Court also observed,

31

> In forbidding bills of attainder, the draftsmen of the Constitution sought to prohibit the ancient practice of the Parliament in England of punishing without trial "specifically designated persons or groups." *United States v. Brown*, 381 U.S. 437, 447 [ ] (1965). Historically, bills of attainder generally named the persons to be punished. However, "[t]he singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party of the United States v. Subversive Activities Control Board*, 367 U.S. 1, 86 [ ] (1961).

*Id.* at 848.

In *Clough v. Slattery*, United States Magistrate Judge Lorenzo Garcia addressed the same contention by a re-employed retiree who argued that NMSA 1978 § 10-11-8(G) constitutes a bill of attainder. *Clough v. Slattery*, Case No. 11 CV 16 LFG/WDS, *Memorandum Opinion and Order* Doc. No. 14 at p. 6 (Feb. 25, 2011). As noted by Magistrate Judge Garcia,

> To determine whether a statute comes within this definition, there are three necessary inquiries: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish.

*Id.* (citing *Taylor v. Sebelius*, 189 Fed. App'x 752, 758 (10th Cir. July 21, 2006) (unpublished decision).

The Court agrees with Magistrate Judge Garcia's determination that NMSA 1978 § 10-11-8(G) is not a bill of attainder. NMSA 1978 § 10-11-8(G) does not impose legislative punishment on re-employed retirees, and NMSA 1978 § 10-11-8(G) furthers a non-punitive legislative purpose: to improve the financial condition of the PERA Fund and the budgetary concerns of PERA-affiliated employers. Therefore, the Court finds that Count VI fails to state a

claim as a matter of law, and the Court will dismiss Count VI.[17]

IT IS ORDERED that:

1. Plaintiffs claims against PERA and the State of New Mexico under 42 U.S.C. § 1983 will be dismissed for lack of subject matter jurisdiction; and

2.  All of Plaintiffs' other claims asserted in the Complaint will be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

[17] Plaintiffs point out that in the Motion, Defendants failed to make specific arguments supporting dismissal of Count VI other than to ask the Court to dismiss all of the claims in the Complaint. However, the Court finds that, as a matter of law, NMSA 1978 § 10-11-8(G) cannot be considered a bill of attainder. Thus, the Court may dismiss Count VI, as generally requested by Defendants in their Motion.